Ari D. Schneider
The Busch Law Group LLC
402 Main Street, Suite 203
Metuchen, New Jersey 08840
Attorneys for Plaintiff
*Harbortouch Payments, LLC.*
*f/k/a United Bank Card, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HARBORTOUCH PAYMENTS, LLC, f/k/a UNITED BANK CARD, INC. | : |
|  | : |
| Plaintiff, | : **DOCUMENT ELECTRONICALLY FILED** |
|  | : Civil Action No. 3:14-cv-06049-JAP-LHG |
| v. | : |
| DENALI STATE BANK, JOHN DOES (1-10) and JANE DOES (1-10), fictitious persons; and ABC CORPORATIONS (1-10), fictitious business entities, | : |
| Defendant. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65**

Counsel and On the Brief:

Ari D. Schneider, Esq.

## Table of Contents

TABLE OF CONTENTS ......................................... i

TABLE OF AUTHORITIES ................................ ii-iii

PRELIMINARY STATEMENT ..................................... 1

STATEMENT OF FACTS ....................................... 2

STATEMENT OF PROCEDURAL HISTORY .......................... 3

JURISDICTION/VENUE ....................................... 3

LEGAL ARGUMENT ........................................... 5

 I. PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF 5

  A. PLAINTIFF HAS DEMONSTRATED A REASONABLE PROBABILITY
  OF SUCCESS ON THE MERITS ............................... 6

   1. PLAINTIFF IS LIKELY TO SUCCEED ON ITS CLAIM AGAINST
   DEFENDANT FOR BREACH OF CONTRACT ..................... 8

   2. PLAINTIFF IS LIKELY TO SUCCEED ON ITS CLAIM AGAINST
   DEFENDANT FOR TORTIOUS INTERFERENCE WITH A CONTRACT . 11

   3. PLAINTIFF IS LIKELY TO SUCCEED ON ITS CLAIM FOR
   BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR
   DEALING ........................................... 14

  B. PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT
  PRELIMINARY INJUNCTIVE RELIEF ........................ 16

  C. THE RELATIVE HARDSHIPS WEIGH IN FAVOR OF PRELIMINARY
  INJUNCTIVE RELIEF .................................... 19

  D. THE PUBLIC INTEREST WEIGHS IN FAVOR OF ISSUING
  INJUNCTIVE RELIEF .................................... 21

CONCLUSION ............................................ 22

## TABLE OF AUTHORITIES

**Federal Court Cases:**

Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 812-813 (1989) ........................................ 4

Allen v. World Inspection Network Intern., Inc., 389 N.J. Super. 115, 125 (2006) ................................. 4

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) ...5

AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) ..................................... 5

Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982) ........................................................6,7

Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) ........ 7

Constructors Ass'n of W. Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978) ......................................... 7

Hutchinson v. Del. Sav. Bank FSB, et al., 410 F. Supp. 2d 374, 385 n. 21 (D.N.J. 2006) ........................... 8

Digiorgio Corp. v. Mendez & Co., 230 F. Supp. 2d 552, 558 (D.N.J 2002) ......................................... 12

Feldman v. U.S. Sprint Communications Co., 714 F. Supp. 727, 731 (D.N.J. 1989) .................................. 14

Freedman Truck Center, Inc. v. General Motors Corp., 784 F. Supp. 167, 177-178, (D.N.J.1992) ....................... 14

Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989) .............................. 16

Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998) .............................. 16

Frank's GMC Truck Ctr., Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988) ........................... 16

Scholastic Funding Group, LLC v. Kimble, 2007 U.S. Dist. LEXIS 30333, *25 (2007) .............................. 16

Wright Med. Tech., Inc. v. Somers, 37 F.Supp.2d 673, 684
(D.N.J. 1999) ........................................21

AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421,
1427 (3d Cir. 1994) ..................................21

**State Court Cases:**

Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J.
739, 751-52, (1989) ..................................12

Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420
(1997) ...............................................14

J.H. Renarde, Inc. v. Sims, 312 N.J. Super. 195, 203 (1998)
.....................................................17

National Starch & Chemical Corp v. Parke Chemical Corp.,
219 N.J. Super 158, 163 (App. Div. 1987) ............17

## PRELIMINARY STATEMENT

Plaintiff, Harbortouch Payments, LLC, f/k/a United Bank Card, Inc. (hereinafter referred to as "Plaintiff"), requests the issuance of immediate injunctive relief to restrain Defendant, Denali State Bank (hereinafter referred to as "Defendant"), from violating the clear and unambiguous terms of the Referral Bank Agreement ("RBA") and the Financial Institution Agreement (the "Agreement") (collectively referred to as "Agreements"), entered into between Plaintiff (United Bank Card, Inc.)[1] and Defendant.[2] In particular, under the Agreements, Plaintiff is seeking to prevent Defendant from soliciting and converting Plaintiff's Merchants to other Point of Sale ("POS") system service providers, as well as from engaging in conduct that imposes financial risk, or undue economic hardship to Plaintiff and/or damages the goodwill of Plaintiff. Evidence gathered by Plaintiff illustrates that Defendant has, and continues to, solicit and convert customers that it had originally referred to Plaintiff under the terms of

---

[1] Plaintiff has since changed its name to Harbortouch Payments, LLC.

[2] As set forth in the Certification of Terrence P. Sullivan, the Agreement, which contains the same relevant provisions as the RBA, was created to continue to bind the parties to the original terms of the RBA, while lessening the length of their contractual relationship.

the Agreements, and that have set up POS accounts with Plaintiff.

Defendant's breach of the Agreements is in blatant disregard of the covenants under the Agreements, and has caused, and threatens to continue to cause, irreparable harm to Plaintiff.  Plaintiff seeks to restrict Defendant from wrongfully soliciting and converting Plaintiff's Merchants acquired pursuant to the Agreements that Randy Weaver, Defendant's EVP/Chief Financial Officer, executed on behalf of Defendant. The restraints sought in the Verified Complaint are necessary to prevent further irreparable injury and to preserve the status quo.  If this application is not granted, Plaintiff will suffer irreparable harm, and Defendant will continue to improperly solicit and convert Plaintiff's customers to other POS system service providers.  Defendant must be enjoined from continuing to do so.

## STATEMENT OF FACTS

The facts on which Plaintiff's application is based are fully set forth within the accompanying Declaration of Terrence Sullivan, Esq. ("Sullivan Dec.") and the Verified Complaint initially filed with the Hunterdon County Superior Court and ultimately removed to this Court.

2

## STATEMENT OF PROCEDURAL HISTORY

On or about September 9, 2014, Plaintiff filed an Order to Show Cause seeking temporary restraints and Verified Complaint, alleging breach of contract, tortious interference with a contract and breach of covenant of good faith and fair dealing.  See, Civil Docket for Case #3:14-06049-JAP-LHE ("Civil Docket"), #1 – attachment 1.  The Honorable Edward M. Coleman, P.J.Ch., executed Plaintiff's Order to Show Cause and scheduled a hearing to address Plaintiff's request for temporary relief for October 17, 2014. See, Exhibit A annexed hereto. Plaintiff served Defendant with said Order on September 16, 2014.  See, Defendant's Notice of Removal, Civil Docket #1, ¶2. Thereafter, but prior to the October 17, 2014 hearing before Judge Coleman, Defendant filed a Notice of Removal with this Court on September 29, 2014.  Id.

## JURISDICTION / VENUE

Section 10.7 of both the RBA and the Agreement state that "The Agreement will be deemed to be a contract made under the laws of the State of New Jersey, and will be construed in accordance with the laws of New Jersey without regard to principles of conflicts of law.  The exclusive forum and venue for the adjudication of any rights, claims or disputes arising out of or in connection with this

3

Agreement shall be the federal or state courts of New Jersey." At the time the RBA and the Agreement were entered into, Plaintiff had a principal place of business in Hampton, New Jersey – Hunterdon County. Defendant's principal place of business was and remains Fairbanks, Alaska. Thus, because Plaintiff's principal place of business was in New Jersey at the time the Agreement became effective and because Defendant expressly agreed to submit to the Jurisdiction of this state, the Superior Court of New Jersey – Hunterdon County Courthouse, initially, was the proper venue. Therefore, this matter is also properly venued in the United Stated District Court, District of New Jersey, following the removal of same by Defendant.

However, Section 10.13 of the RBA and the Agreement read, in relevant part, as follows:

> **Dispute Resolution.** Any dispute or claim arising out of, or in connection with this Agreement will be settled by final and binding arbitration to be held in New Jersey in accordance with the commercial rules of the American Arbitration Association ("AAA").

Notwithstanding the foregoing requirement, the relief sought herein is appropriately before this Court pursuant to Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 812-813 (1989) and Allen v. World Inspection Network Intern., Inc., 389 N.J. Super. 115, 125 (2006). The AAA,

4

pursuant to the foregoing *dispute resolution* provision, will separately address any additional relief sought by Plaintiff, beyond emergent injunctive relief.

**LEGAL ARGUMENT**

### I.   PLAINTIFF IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.

Injunctive relief is a "drastic and extraordinary remedy," which should be granted only in limited circumstances. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002). To obtain such interim relief, a movant must demonstrate (1) a reasonable likelihood of success on the merits, (2) irreparable harm if the injunction is not granted, (3) that the balance of hardships favors granting the preliminary relief, and (4) that granting the preliminary relief is in the public interest. Id; See also, AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) ("The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief.").

Perhaps no case is more compelling for preliminary relief then the case at bar. Defendant blatantly violated and disregarded Sections 7.3 and 7.4 of the Agreements and

5

expressed their desire to continue to violate same. Specifically, Defendant solicited and converted Plaintiff's Merchants [3] in violation of the Agreements - Plaintiff actively effectuated the successful conversion of at least five (5) Merchants that Defendant had previously referred to Plaintiff. Even worse, Defendant, by their own admission, seeks to continue to solicit and covert the one hundred and eighteen (118) active Merchants they have referred to Plaintiff. [4] Now, absent temporary and preliminary injunctive relief, Defendant will be emboldened to continue down such a path, converting Plaintiff's Merchants to Plaintiff's direct competitors. As a result, Plaintiff is facing imminent irreparable further harm absent the Court's intervention.

## A. Plaintiff Has Demonstrated a Reasonable Probability of Success on the Merits.

The party seeking a preliminary injunction must demonstrate a "reasonable probability of eventual success in the litigation." Kershner v. Mazurkiewicz, 670 F.2d 440,

---

[3] *Merchant* is defined in the Agreement as a business solicited by Financial Institution that has entered into a Merchant Agreement and to which Processor provides services under this Agreement. Further, Section 2.8 of the Agreement establishes that all right, title and interest in all Merchant Agreements is that of Plaintiff.
[4] As well as the six (6) seasonal accounts that are temporarily inactive, but will be reactivated during their business season.

443 (3d Cir. 1982). In evaluating whether a moving party has satisfied this first part of the preliminary injunction standard, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d Cir. 1975) (citations omitted). Further, if all other factors of the preliminary injunction test are present, the requirement of likelihood of success can be eased a bit. Constructors Ass'n of W. Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978).

Defendant's conduct in breaching the Agreements constitutes a breach of contract, tortious interference with multiple contracts and a breach of the implied covenant of good faith and fair dealing implicit in the Agreements. Plaintiff is entitled to temporary, preliminary and permanent injunctions prohibiting Defendant from continuing to benefit from its breaches of the Agreements and permanently enjoining Defendant from soliciting and converting Plaintiff's Merchants to competitor POS system service providers.

The Agreements entered into by Defendant are designed to protect the legitimate business interests of Plaintiff

by preventing Defendant from soliciting and/or converting Merchants of Plaintiff. Even without the benefit of discovery, Plaintiff has already developed and presented to the Court, through the Verified Complaint and the Declaration of Terrence Sullivan, Esq., substantial evidence establishing the merits of Plaintiff's claims.

### 1.   Plaintiff Is Likely To Succeed On Its Claim Against Defendant For Breach of Contract.

Plaintiff is likely to succeed on the merits of its claim against Defendant due to Defendant's breaches of Sections 7.3E and 7.4A of the Agreements. The requisite elements for a cause of action under this theory are as follows: (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that plaintiff performed its own contractual duties." Hutchinson v. Del. Sav. Bank FSB, et al., 410 F. Supp. 2d 374, 385 n. 21 (D.N.J. 2006).

Here, Plaintiff and Defendant entered into valid contracts - the RBA and the Agreement. Defendant's CFO knowingly and voluntarily signed said contracts, binding Defendant to the terms of same. In fact, since entering into this contractual relationship, Defendant has reaped the benefits of the Agreements by receiving compensation for all referrals, in the form of residuals every thirty (30) to forty-five (45) days. Moreover, as the terms of

8

those portions of the contracts were clear, the prohibitive terms of the non-conversion and non-solicitation provisions - including their post-termination effects - are similarly clear. Likewise, Defendant's responsibility to not engage in activity that imposes financial risk and/or causes undue economic hardship is equally well defined.

However, Plaintiff has gathered ample evidence of specific violations by Defendant of the prohibitions set forth in the foregoing Agreements. Pursuant to an April 21, 2014 customer service phone conversation with the owner of The Electrician, LLC,[5] Plaintiff learned that Defendant had referred The Electrician, LLC to another merchant services provider. See Sullivan Dec., Par. 17. Similarly, Plaintiff learned through two (2) recorded phone conversations with Industrial Service Corporation and Hompesch & Evans, APC that Defendant aggressively referred them to other POS service providers. See Sullivan Dec., Par.'s 29 and 33. Further, and most important, Defendant, through several admissions and statements against interest, conceded that it has been and will continue to solicit and convert Plaintiff's Merchants — all one hundred and eighteen (118) active Merchants attributable to referrals from Defendant.

---

[5] Electrician, LLC is a Merchant of Plaintiff's pursuant to the Agreement.

See Sullivan Dec., Par. 35. Specifically, Defendant alluded to their own practice of "reminding" merchants that their agreements with Plaintiff have an automatic renewal clause – which is both an act of solicitation and conduct that imposes financial risk and undue economic hardship to Plaintiff. See Sullivan Dec., Ex. D.   Even more telling, in a May 20, 2014 correspondence to Plaintiff Defendant suggested a resolution to the herein matter – e.g., "Denali State Bank might agree to a slight reduction in payment of residuals in return for a release of the prohibition against soliciting merchants." See Id.   Additionally, on or about June 2, 2014, Joseph Messina (Plaintiff's Vice President of Sales) and Randy Weaver (Defendant's CFO) had a phone conversation during which Mr. Weaver verbally confirmed that Defendant's agents actively referred Plaintiff's Merchants to other merchant service providers. See Sullivan Dec., Par. 41 and Ex E.   Finally, the overall decline in Defendant's merchant portfolio, coupled with the sharp rise in the number of Defendant merchant account closures during March, April and May of 2014, leads to the inescapable inference that said Merchants switched POS system service providers after being actively solicited by Defendant.   Importantly, without the foregoing conduct of Defendant, the following Merchants would still being doing

10

business with Plaintiff: The Electrician, LLC; 40 - Mile Air Ltd.; RWR Air Inc.; Industrial Service Corporation; Hompesch & Evans, APC.

Accordingly, Defendant's conduct in the solicitation and conversion of Plaintiff's Merchants, as well as the imposition of financial risk and undue economic hardship on Plaintiff, constitutes multiple breaches of the Agreements with Plaintiff.  The foregoing contractual breaches by Defendant have undoubtedly caused damages to Plaintiff in that it has directly caused Plaintiff to lose Merchants, thus losing business, as well as causing Plaintiff's reputation to suffer.  Accordingly, Plaintiff has established a *prima facie* breach of contract claim that will likely succeed on the merits, as well as the likelihood of future breach of contract claims that will also likely succeed on the merits, unless the requested injunctive relief is granted.

> **2.  Plaintiff Is Likely To Succeed On Its Claim Against Defendant For Tortious Interference With A Contract.**

Plaintiff is likely to succeed on the merits of its tortious interference with contracts claim against Defendant, as a result of Defendant's interference with contracts between Plaintiff and Merchants. New Jersey has

adopted the Restatement (Second) of Torts definition of tortious interference with an existing contract. To establish this tort, a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference. Digiorgio Corp. v. Mendez & Co., 230 F. Supp. 2d 552, 558 (D.N.J 2002), adopting the holding in Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 751-52, (1989).

Here, though Plaintiff has contracted with Defendant, Plaintiff has also contracted with all Merchants referred by Defendant, separate and distinct from its relationship with Defendant. Defendant is aware of these separate and distinct relationships as such relationships have been created as a direct result of and in furtherance of the original Agreements between Plaintiff and Defendant. In fact, after all Merchants are referred to Plaintiff and then approved by Plaintiff, they enter into a contractual relationship with Plaintiff for the use of the Plaintiff's services. See Sullivan Dec., Ex.'s A and B. Moreover, the Agreement states, "the parties understand and agree that all right, title and interest in all Merchant Agreements is that of [Plaintiff]." See Id.

12

Defendant's intentional interference must be inferred from its knowledge of the ancillary goals of its own contracts with Plaintiff, and its understanding of general industry practice relating to Merchant referrals. In fact, Defendant's stated desire to continue to solicit and convert Merchants, leaves no doubt that Defendant's interference was, and will continue to be, intentional.

Any assertion that the conversion of such Merchants was, and/or could continue to be justified, is misplaced. Beyond the fact that Defendant's conduct was without statutory authority, Defendant's attempt to justify its conduct as a means of providing customer service to "our customers" is unavailing because the terms of the Agreement expressly state that all referred Merchants are thereafter owned by Plaintiff. Moreover, the specific language of the Agreements does not provide for any scenario where the conversion and/or solicitation of Plaintiff's Merchants would be justified – rather, the Agreements expressly provide that such conduct is prohibited in all circumstances. See Sulliven Dec., Ex.'s A and B.

Lastly, the damages suffered by Plaintiff as a result of Defendant's conduct are both real and irreparable. As set forth in detail above, not only does a Merchant conversion result in substantial lost profits to Plaintiff,

13

in perpetuity, but also each conversion results in broken business relationships and trusts that can never be re-established.

Here, Plaintiff has not only established a *prima facie* cause of action for tortious interference with a contract, but a likelihood of success on the merits.

### 3. Plaintiff Is Likely To Succeed On Its Claim For Breach Of Implied Covenant Of Good Faith And Fair Dealing.

Plaintiff asserts a breach of the implied covenant of good faith and fair dealing. New Jersey law requires that each party to a contract act in good faith and deal fairly with the other in performing and enforcing the terms of the contract. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). The implied covenant prohibits a party to the contract from doing anything that "will destroy or injure the right of the other party to receive the fruits of the contract." Feldman v. U.S. Sprint Communications Co., 714 F. Supp. 727, 731 (D.N.J. 1989). However, the "function of the court is to enforce the [agreement] as written, not to write for the parties a different or a better contract." See, Freedman Truck Center, Inc. v. General Motors Corp., 784 F. Supp. 167, 177-178, (D.N.J.1992).

14

Here, it is clear that Defendant has not acted honestly towards Plaintiff, nor intends to act honestly in the future. Moreover, Defendant failed to refrain from acting to destroy or injure Plaintiff's rights to receive the ancillary fruits of the Agreements with Defendant (*i.e.*, profits from Merchant processing). Instead, Defendant acted in complete disregard of its obligations under the terms of the Agreements by soliciting and converting Plaintiff's Merchants to other POS system service providers and imposing financial risk and/or undue economic hardship to Plaintiff. This conduct destroyed the right of Plaintiff to receive the benefit of its contracts with Defendant. Therefore, Plaintiff has established a *prima facie* breach of implied covenant of good faith and fair dealing claim, as well as a reasonable likelihood that said claim will be successful on the merits.

**B.    Plaintiff Will Suffer Irreparable Harm Without Preliminary Injunctive Relief.**

In order to satisfy this requirement for a preliminary injunction, the movant must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). Furthermore, "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998)." A court may not, however, grant injunctive relief for purely economic harm. Frank's GMC Truck Ctr., Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). This Court has determined that if a Defendant is not restrained from violating a Non-Solicitation Provision, Plaintiff's reputation and goodwill will be damaged since its competitors and clients will likely view any "defection" of employees to a competitor in a negative light. See, Scholastic Funding Group, LLC v. Kimble, 2007 U.S. Dist. LEXIS 30333, *25 (2007).[6]

---

[6] A copy of this unpublished case is annexed hereto as Exhibit B.

16

Here, any attempt to quantify such damage to Plaintiff, concerning Merchants lost as a result of Defendant's conversions, would be problematic because of the difficulty in ascertaining the monetary value of that loss of business. See J.H. Renarde, Inc. v. Sims, 312 N.J. Super. 195, 203 (1998) (citing National Starch & Chemical Corp v. Parke Chemical Corp., 219 N.J. Super 158, 163 (App. Div. 1987)). The conversion of Merchants places Plaintiff in the position of likely never being able to regain business relationships with those Merchants. Specifically, the relationship of trust between Plaintiff and the converted Merchants has been irreparably harmed. Such action could require Plaintiff to provide Merchants with a greater incentive to come back, ultimately acting to diminish Plaintiff's profit potential. Thus, once a Merchant is converted, Plaintiff may never be able to do business with that Merchant again. Further, the loss of Merchants as customers causes Plaintiff's reputation to suffer in both the eyes of similarly situated Merchants, as well as Plaintiff's direct competitors. Under these circumstances, the issuance of a temporary injunction is necessary.

Moreover, Randy Weaver, Defendant's CFO, expressly acknowledged (on behalf of Defendant), when he signed both

17

the RBA and the Agreement, that Defendant is prohibited from "engaging in activities which may impose financial risk to" Harbortouch or "result in undue economic hardship and/or damage to the goodwill of" or making "any attempt to convert any Merchant from [Harbortouch] to any other entity performing services similar to [Harbortouch]", consistent with Section 7.3E (iii) and (iv). See Sullivan Dec., Ex. A and Ex. B. Defendant further agreed that they "will not solicit any Merchant to terminate a Merchant Agreement for any reason after termination of this Agreement," as set forth within Section 7.4A of both the RBA and the Agreement. See Sullivan Dec., Ex. A and Ex. B. Accordingly, Defendant understood that such violations of the Agreements would have lasting effects and cause irreparable harm.

Defendant has already exhibited a cunning willingness to solicit and convert Plaintiff's Merchants. In fact, Defendant has, to date, successfully converted five (5) of Plaintiff's Merchants. See Sullivan Dec., Par.'s 15-34. Moreover, Plaintiff currently has one hundred and eighteen (118) additional active Merchant accounts as a result of Defendant's referrals, for which Defendant has expressed a desire to continue soliciting and converting. See Sullivan Dec., Par. 35 and Ex. D. Specifically, Defendant has attempted to resolve this matter by agreeing to a slight

18

reduction in residuals in return for a release on the prohibition against soliciting Merchants. See Sullivan Dec., Ex. D. Defendant's past practice coupled with their expressed intentions makes it a certainty they will continue to solicit and convert Plaintiff's Merchants.

No monetary damages or similar remedy at law is adequate, on its own, to address this situation. Under these circumstances, injunctive relief, including temporary restraints, is necessary to protect Plaintiff from this imminent threat of further irreparable harm.

### C. The Relative Hardships Weigh in Favor of Preliminary Relief.

If the Court does not issue a temporary and preliminary injunction, Plaintiff faces the immediate threats outlined above - namely the continued solicitation and ultimate conversion of its Merchants to Plaintiff's competitors. Moreover, Plaintiff's reputation will continue to suffer, as business relationships cease to exist. Lastly, once converted, it becomes extremely difficult, if not impossible, to ever again conduct business with the lost Merchants and receive the fruits of such relationships again.

By contrast, the requested relief will not unduly burden Defendant. Plaintiff seeks only that Defendant be compelled by Court Order to comply with the Agreements it

freely entered into.   At the time the Agreements were executed, Defendant surely felt that it would receive worthwhile benefits from forming such a relationship, in the face of certain known preclusions. Accordingly, a Court order preventing further solicitations and conversions by Defendant will only serve to return both parties to the *status quo* of their relationship prior to Defendant's egregious actions.

Defendant cannot complain of any undue hardship.   This Defendant never had any right to solicit and/or convert Plaintiff's Merchants.   Defendant has no right to solicit and convert Merchants it referred to Plaintiff as the "right, title and interest in all" Merchants, per the terms of the Agreements, are that of the Plaintiff. See, Sullivan Dec., Exhibits A and B.

Lastly, any hardship to Defendant that may result from a preliminary injunction was brought about by Defendant's own conduct and should be weighed in such context. Defendant should not be permitted to use its unlawful conduct as a shield from Plaintiff's requested injunctive relief.

**D.   The Public Interest Weighs in Favor of Issuing Injunctive Relief.**

The public interest generally weighs in favor of enforcing private contracts. Wright Med. Tech., Inc. v. Somers, 37 F.Supp.2d 673, 684 (D.N.J. 1999). The public interest will almost always favor the movant if the movant demonstrates both a likelihood of success on the merits and irreparable injury. See, AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

Here there would be no harm to the public interest in prohibiting Defendant from soliciting Plaintiff's Merchants because any potential Merchant of Plaintiff would be free to choose the POS Service Provider it desires to use "so long as the customer has not been illegally solicited." See, Wright Med. Tech., supra. Additionally, there is a strong public interest in enforcing the private Agreement between the parties. Lastly, Plaintiff has illustrated in great detail a likelihood of success on the merits and irreparable injury.

21

Plaintiff has demonstrated the likelihood of success on the merits, the danger of immediate, irreparable harm, and a balancing of the equities in its favor. Given these circumstances, and the immediate threat of irreparable harm to Plaintiff, the Court should issue the temporary and preliminary injunctive relief sought by Plaintiff.

### CONCLUSION

For all of the reasons set forth within the Verified Complaint, the Declaration of Terrence Sullivan, Esq. and this Brief, Plaintiff's request for temporary and preliminary injunctive relief should be granted.

Dated: October 9, 2014

By: /s/ *Ari D. Schneider*
Ari D. Schneider

A

Scholastic Funding Group, LLC v. Kimble, 2007 U.S. Dist. LEXIS 30333

Lexis Advance®
Research

2007 U.S. Dist. LEXIS 30333          3 Filters ▽    🔍    More ▽

Document: Scholastic Funding Group, LLC v. Kimble, 2007 U.S. Dist. LEXIS 30333

Results list

# ◆Scholastic Funding Group, LLC v. Kimble, 2007 U.S. Dist. LEXIS 30333

Copy Citation

United States District Court for the District of New Jersey

April 24, 2007, Decided ; April 24, 2007, Filed

Civil Action No.: 07-557 (JLL)

**Reporter**

**2007 U.S. Dist. LEXIS 30333** | 2007 WL 1231795

SCHOLASTIC FUNDING GROUP, LLC, Plaintiff, v. HERBERT KIMBLE, et al., Defendants.

**Notice:  [1]**  NOT FOR PUBLICATION

## Core Terms

preliminary injunction, confidential information, Non-Compete, soliciting, employees, irreparable harm, restrain, argues, Non-Solicitation, services, enjoin, customers, parties, irreparable, confidential, terminate, telemarketing, affiliates, disclosure, injunction, merits, injunctive relief, oral argument, competitor, operations, reputation, breached, damages, confidentiality provision, likelihood of success

## Case Summary

**Procedural Posture**

Plaintiff former employer filed suit against defendants, a former employee and a direct competitor of the employer, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of confidential information, breach of the duty of loyalty, and various state law tort claims pursuant to New Jersey law. The employer and the employee moved for a preliminary injunction pursuant to <u>Fed. R. Civ. P. 65</u>.

**Overview**

The court found that there was clearly the existence of a contract signed by the employee which contained a specific non-compete provision. The employer argued that the employee breached this provision when he began his employment with the competitor. The employee argued that the non-compete provision was invalid because it was unreasonable in scope and did not pertain to a protectible interest of the employer's. The court found that the employer had a protectible interest in its revenue/cost analysis since it constituted confidential business information. The court also found that since the telemarketing industry was broad-ranging in its scope by the nature of its business (placing nationwide telephone calls), the geographic scope of the covenant, or lack thereof, was likely a reasonable restriction. Next, the court found that if it did not grant the relief requested by the employer in enjoining the employee from violating the Non-Compete Provision, the employer would suffer an immediate, irreparable harm. Finally, the court found that there existed no imminent threat of disclosure as to the employer's alleged confidential and protectible information since same had been disclosed.

**Outcome**

The employer's motion was granted as to the non-compete and non-solicitation provisions and denied as to the confidentiality provision. The employee's motion was denied.

▼ LexisNexis® Headnotes

Civil Procedure > <u>Judicial Officers</u> ▼ > <u>Judges</u> ▼ > <u>Discretionary Powers</u> ▼

Civil Procedure > ... > <u>Injunctions</u> ▼ > <u>Grounds for Injunctions</u> ▼ > <u>General Overview</u> ▼

Civil Procedure > <u>Remedies</u> ▼ > <u>Injunctions</u> ▼ > <u>Preliminary & Temporary Injunctions</u> ▼

*HN1* ⚓ A preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted. Nonetheless, a trial court's decision to issue a preliminary injunction is discretionary. The United States Court of Appeals for the Third Circuit has held that a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied. The court identified those "traditional prerequisites" as follows: (1) whether the movant has demonstrated reasonable probability of eventual success in the litigation; (2) whether the movant has demonstrated that it will be irreparably injured if pendente lite relief is not granted to prevent a change in the status quo; (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. The court further noted that the preservation of the status quo represents the goal of preliminary injunctive relief in any litigation, including in an arbitrable dispute. *Shepardize - Narrow by this Headnote*

Civil Procedure > <u>Remedies</u> ▼ > <u>Injunctions</u> ▼ > <u>Preliminary & Temporary Injunctions</u> ▼
Labor & Employment Law > ... > <u>Conditions & Terms</u> ▼ > <u>Trade Secrets & Unfair Competition</u> ▼ > 💼<u>Noncompetition & Nondisclosure Agreements</u> ▼

*HN2* ⚓ In the United States Court of Appeals for the Third Circuit , it is clear that preliminary injunctions may be granted to enforce non-competition agreements. *Shepardize - Narrow by this Headnote*

Civil Procedure > ... > <u>Injunctions</u> ▼ > <u>Grounds for Injunctions</u> ▼ > <u>Likelihood of Success</u> ▼
Civil Procedure > <u>Remedies</u> ▼ > <u>Injunctions</u> ▼ > <u>Preliminary & Temporary Injunctions</u> ▼

*HN3* ⚓ The party seeking a preliminary injunction must demonstrate a reasonable probability of eventual success in the litigation. In evaluating whether a moving party has satisfied this first part of the preliminary injunction standard, it is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits. Further, if all other factors of the preliminary injunction test are present, the

Scholastic Funding Group, ALC v. JMRM, 2007 U.S. Dist. LEXIS 37862

Case 3:14-cv-00049-FLW-LHG Document 6-1 Filed 10/09/14 Page 31 of 57 PageID: 141  10/8/14, 11:00 AM

requirement of likelihood of success can be eased a bit. *Shepardize - Narrow by this Headnote*

Contracts Law > Breach ⯆ > Breach of Contract Actions ⯆ > Elements of Contract Claims ⯆

**HN4⬇** Under New Jersey law, the following four elements are necessary in a breach of contract claim: (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that plaintiff performed its own contractual duties. *Shepardize - Narrow by this Headnote*

Labor & Employment Law > ... > Conditions & Terms ⯆ > Trade Secrets & Unfair Competition ⯆ > 💼 Noncompetition & Nondisclosure Agreements ⯆

**HN5⬇** It is settled law in New Jersey that restrictive covenants are valid in appropriate circumstances. A covenant by an employee not to compete with his employer after their employment relationship ceases will be found to be enforceable if it is reasonable in light of the totality of circumstances. A covenant that simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public will generally be upheld. *Shepardize - Narrow by this Headnote*

Labor & Employment Law > ... > Conditions & Terms ⯆ > Trade Secrets & Unfair Competition ⯆ > 💼 Noncompetition & Nondisclosure Agreements ⯆
Labor & Employment Law > ... > Conditions & Terms ⯆ > Trade Secrets & Unfair Competition ⯆ > 💼 Trade Secrets ⯆

**HN6⬇** It is well-settled that a non-compete agreement which seeks only to restrain competition is unreasonable. However, the New Jersey Supreme Court recognizes that an employer has a patently legitimate interest in protecting his trade secrets as well as his confidential business information and he has an equally legitimate interest in protecting his customer relationships. *Shepardize - Narrow by this Headnote*

Labor & Employment Law > ... > Conditions & Terms ▾ > Trade Secrets & Unfair Competition ▾ > 💼 Noncompetition & Nondisclosure Agreements ▾

**HN7** In determining reasonableness of a non-compete agreement, New Jersey courts consider duration, geographic limits and the scope of activities prohibited. Each of those factors must be narrowly tailored to ensure the covenant is no broader than necessary to protect the employer's interests. One year limitations have been upheld by New Jersey courts. *Shepardize - Narrow by this Headnote*

Civil Procedure > ... > Injunctions ▾ > Grounds for Injunctions ▾ > Irreparable Harm ▾
Civil Procedure > Remedies ▾ > Injunctions ▾ > Preliminary & Temporary Injunctions ▾

**HN8** In order to satisfy the second requirement for a preliminary injunction, the movant must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. In the context of non-competition agreements, irreparable injury may be shown if the former employee may avail himself of sensitive product strategies both as to development and marketing, which may be of extreme value to the competitor. Furthermore, grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. *Shepardize - Narrow by this Headnote*

Civil Procedure > ... > Injunctions ▾ > Grounds for Injunctions ▾ > Irreparable Harm ▾
Civil Procedure > Remedies ▾ > Injunctions ▾ > Preliminary & Temporary Injunctions ▾

**HN9** The United States Court of Appeals for the Third Circuit has held that more than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury, or a presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights. Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do. *Shepardize - Narrow by this Headnote*

Civil Procedure > ... > Injunctions ▾ > Grounds for Injunctions ▾ > Irreparable Harm ▾
Civil Procedure > Remedies ▾ > Injunctions ▾ > Preliminary & Temporary Injunctions ▾

*HN10* ⚓ The moving party for a preliminary injunction must demonstrate an imminent threat of disclosure. In the context of determining whether a threat of disclosure exists, it is but a finding as to the probable future consequences of a course of voluntary action undertaken by the defendants. Courts are frequently called upon to draw such conclusions based on a weighing of the probabilities, and while a conclusion that a certain result will probably follow may not ultimately be vindicated, courts are nonetheless entitled to decide or "predict" the likely consequences arising from a given set of facts and to grant legal remedies on that basis. *Shepardize - Narrow by this Headnote*

Civil Procedure > ... > Injunctions ▾ > Grounds for Injunctions ▾ > Irreparable Harm ▾
Civil Procedure > Remedies ▾ > Injunctions ▾ > Preliminary & Temporary Injunctions ▾

*HN11* ⚓ To demonstrate irreparable harm, the moving party must show more than a mere risk that information will be disclosed -- the party must instead demonstrate a clear threat of misappropriation or imminent threat of disclosure. *Shepardize - Narrow by this Headnote*

Civil Procedure > ... > Injunctions ▾ > Grounds for Injunctions ▾ > Irreparable Harm ▾
Civil Procedure > Remedies ▾ > Injunctions ▾ > Preliminary & Temporary Injunctions ▾

*HN12* ⚓ The United States Court of Appeals for the Third Circuit recognizes that grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. *Shepardize - Narrow by this Headnote*

Civil Procedure > ... > Injunctions ▾ > Grounds for Injunctions ▾ > Irreparable Harm ▾
Civil Procedure > Remedies ▾ > Injunctions ▾ > Preliminary & Temporary Injunctions ▾

*HN13* ⚓ In the context of a preliminary injunction, with respect to confidential information, the moving party must demonstrate an imminent threat of disclosure. *Shepardize - Narrow by*

<u>this Headnote</u>

Civil Procedure > ... > <u>Injunctions</u> ▾ > <u>Grounds for Injunctions</u> ▾ > <u>Irreparable Harm</u> ▾
Civil Procedure > ... > <u>Injunctions</u> ▾ > <u>Grounds for Injunctions</u> ▾ > <u>Likelihood of Success</u> ▾
Civil Procedure > <u>Remedies</u> ▾ > <u>Injunctions</u> ▾ > <u>Preliminary & Temporary Injunctions</u> ▾

*HN14* The United States Court of Appeals for the Third Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits elements of the standard for preliminary injunction, stating: The Third Circuit cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent. *Shepardize - Narrow by this Headnote*

Civil Procedure > <u>Remedies</u> ▾ > <u>Injunctions</u> ▾ > <u>Preliminary & Temporary Injunctions</u> ▾

*HN15* A preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted. *Shepardize - Narrow by this Headnote*

Civil Procedure > ... > <u>Injunctions</u> ▾ > <u>Grounds for Injunctions</u> ▾ > <u>General Overview</u> ▾
Civil Procedure > <u>Remedies</u> ▾ > <u>Injunctions</u> ▾ > <u>Preliminary & Temporary Injunctions</u> ▾

*HN16* While the public has an interest in free competition, its interest is also furthered by protection of private contractual rights. Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships. *Shepardize - Narrow by this Headnote*

**Counsel:** For SCHOLASTIC FUNDING GROUP, LLC, Plaintiff, Counter Defendant: <u>ZACHARY D. ROSENBAUM</u> ▾, LEAD ATTORNEY, <u>LOWENSTEIN SANDLER PC</u> ▾, ROSELAND, NJ.

For HERBERT KIMBLE, Defendant: <u>JON W. GREEN</u> ▾, LEAD ATTORNEY, <u>CLAUDIA A. REIS</u> ▾,

GREEN, SAVITS & LENZO, LLC ▾, MORRISTOWN, NJ.

For UNIVERSITY LOAN SERVICES, LLC, GLOBEX MARKETING SERVICES, LLC, Defendants: DAVID R. STRICKLER ▾, LEAD ATTORNEY, NORRIS, McLAUGHLIN & MARCUS, PC ▾, SOMERVILLE, NJ.

For JEFFREY BALFOUR, JOSHUA JAGID, ThirdParty Defendants: ZACHARY D. ROSENBAUM ▾, LEAD ATTORNEY, LOWENSTEIN SANDLER PC ▾, ROSELAND, NJ.

**Judges:** Jose L. Linares ▾, United States District Judge.

**Opinion by:** Jose L. Linares

# Opinion

## OPINION

### LINARES ▾, District Judge.

This matter comes before the Court on Plaintiff Scholastic Funding Group, LLC's ("Plaintiff" or "Scholastic") motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 and Defendant Herbert Kimble's ("Defendant" or "Kimble") motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The Court has considered the submissions of the parties and has heard **[2]** oral argument. For the reasons set forth in this Opinion, Plaintiff's motion is denied in part and granted in part and Defendant's motion is denied.

## BACKGROUND

### A. Procedural History

On January 25, 2007, Scholastic filed a Verified Complaint and application for an Order to Show Cause in the Superior Court of New Jersey, Chancery Division, Bergen County, alleging claims for

breach of contract, breach of the covenant of good faith and fair dealing, misappropriation of confidential information, breach of the duty of loyalty, and various state law tort claims pursuant to New Jersey law. The Honorable Peter E. Doyne ▼, P.J.S.C. issued an Order to Show Cause with temporary restraints on January 29, 2007 (the "State Court TRO"). Defendants University Loan Services, LLC ("University") and Globex Marketing Services, LLC ("Globex") removed to this Court on February 2, 2007 with the consent of Kimble, invoking this Court's diversity jurisdiction.

On March 7, 2007 Kimble filed an Answer, Counterclaim, and Third Party Complaint as well as a motion for an Order to Show Cause with temporary restraints. Kimble sought to (1) enjoin Scholastic from enforcing Article 5 of the Employment **[3]** Agreement, except that Kimble shall not solicit or induce any of Scholastic's employees to terminate their employment in order to become employed with University or for any other reason; and (2) declare that Kimble may become employed with University if these parties so choose to resume their employment relationship. The Court heard oral argument on March 9, 2007 and thereafter denied Kimble's request for temporary restraints. The Court also set a briefing schedule for Kimble's pending motion for preliminary injunction and also for any contemplated cross-motion by Plaintiff. Plaintiff filed its motion for a preliminary injunction on March 16, 2007. The Court heard argument on April 5, 2007 regarding both motions. The instant Opinion addresses both the Plaintiff's and Defendant's motions for preliminary injunctive relief.

## B. Factual Background

The parties have made extensive and detailed factual submissions to the Court. However, for the purposes of these motions, only the relevant factual background will be recounted.

Scholastic is a company involved in consolidation of student loans. In the course of its business, Scholastic purchases lists of potential customers - student **[4]** loan holders - scrubs these lists of ineligible customers, and then calls the customers to inquire whether they are interested in consolidation. When Scholastic began its operations, it sub-contracted with a call center in the Philippines and paid the call center on a per-customer/per-call basis.

On April 4, 2006, Scholastic hired Kimble as its Vice President of Operations. With Kimble's assistance and input, Scholastic later determined that its prior business model might not be the most cost-efficient. Scholastic then completed a study of its revenue and costs and concluded that

it should change the structure of its operations. Scholastic then changed its operations and began to utilize a wholly-owned, subsidiary call center in the Philippines rather than paying an outside center on a per-lead basis.

At the start of his employment with Scholastic, Kimble signed an employment agreement (the "Agreement") with Scholastic. Article 4 of the Agreement pertains to the Records, Trade Secrets & Inventions of Scholastic. Section 4.02(a) of the Agreement defines "Confidential Information" of Scholastic as the following: "various trade secrets, consisting of code, compilations of data and information, **[5]** devices, documents, drawings, equipment, files, formulas, inventions, patterns, processes, programs, records, sources of data and information, specifications, and similar items relating to the business of Scholastic, all of which are owned by Scholastic and regularly used in the operation of Scholastic's business." (Kimble Cert. Ex. 5) (the "Confidentiality Provision"). Section 4.02(b) stipulates that all Confidential Information, whether or not a trade secret, is the exclusive property of Scholastic and 4.02(c) prohibits any employee from misusing, misappropriating, giving, selling, furnishing, or disclosing during or after employment any trade secret. (Id.). Section 4.02(c) also prohibits an employee from disclosing information about Scholastic's customers or vendors and from soliciting customers whom the employee called on during employment with Scholastic. (Id.). Finally, Section 4.02(e) directs an employee to return all Confidential Information to Scholastic upon termination of employment.

Article 5 sets forth a non-competition provision (the "Non-Compete Provision"). The Non-Compete Provision prohibits Kimble from competing either directly or indirectly for one year **[6]** following termination. (Id.). Article 5(b) defines "not compete" as requiring the employee "not to engage or participate in any business that is substantially similar to, or competitive with, the present business of Scholastic." (Id.).

Article 5, Section (d) also sets forth a non-solicitation provision (the "Non-Solicitation Provision") which prohibits Kimble from soliciting or inducing any of Scholastic's employees to terminate their employment or form an organization competing with Scholastic for a period of one year following termination of employment. (Id.).

On January 15, 2007 Kimble resigned from Scholastic. Kimble commenced employment with University on January 22, 2007. The parties do not dispute that University is a direct competitor of Scholastic. Pursuant to the terms of the Order to Show Cause issued by Judge Doyne ▾, Kimble ceased working for University on January 29, 2007.

## DISCUSSION

### A. Legal Standard for Preliminary Injunctive Relief

*HN1* A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993). Nonetheless, **[7]** a trial court's decision to issue a preliminary injunction is discretionary. New England Braiding Co., v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed Cir. 1992). The Third Circuit has held that "a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied." Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir. 1989). The court identified those "traditional prerequisites" as follows: (1) whether the movant has demonstrated reasonable probability of eventual success in the litigation; (2) whether the movant has demonstrated that it will be irreparably injured if pendente lite relief is not granted to prevent a change in the status quo; (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. Ortho Pharm., 882 F.2d at 812-13; see also Wright Med. Tech., Inc. v. Somers 37 F.Supp.2d 673 (D.N.J. 1999). The court further noted that "the 'preservation of the status quo' represents the goal of preliminary injunctive relief in any litigation, including **[8]** in an arbitrable dispute." Id. at 813.

Furthermore, *HN2* in this Circuit, it is clear that preliminary injunctions may be granted to enforce non-competition agreements. See e.g., BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254 (3d Cir. 2000); Arch Pers. Care Prods., L.P. v. Malmstrom, 90 Fed. Appx. 17 (3d Cir. 2003).

### B. Plaintiff's Motion for Preliminary Injunction

Plaintiff's motion for a preliminary injunction asks this Court to:

    1) Preliminarily enjoin Kimble from:

        a) accepting or continuing employment with, consulting, advising, and/or providing services directly or indirectly to University or any affiliate, etc, to the extent that such services would involve, in any manner, the marketing, development, construction, or operation of a company in the business of consolidating and/or refinancing student loans;

b) soliciting or inducing employees of Plaintiff or any affiliate/subsidiary to terminate their employment.

2) Preliminarily enjoin and restrain all Defendants, and all persons acting in concert with them, from:

a) directly or indirectly obtaining, using, transmitting, divulging or communicating **[9]** in any fashion or manner Plaintiff's Confidential Information, including any documents containing or evidencing Confidential Information;

b) directly or indirectly doing business with (which shall include servicing, selling, and/or soliciting) any, clients, affiliates, partners or prospects to become any of the foregoing whom Plaintiff serviced, worked with, sold to, and/or solicited during Kimble's employment with Plaintiff;

3) Compel all Defendants, their agents, servants, representatives, employees, successors, and all other persons acting on their behalf or in concert with them, to cease from using and return forthwith any and all of Plaintiff's property, including, but not limited to Plaintiff's Confidential Information, in their possession, custody or control.

During oral argument, when asked by the Court which claims of the Verified Complaint are those upon which Plaintiff seeks injunctive relief, counsel for Plaintiff responded that such relief truly turns on the Agreement. (Tr. 8:24-25) [1 ⚓]. Accordingly, the Court will focus its analysis on Plaintiff's breach of contract claim.

## [10] 1. Likelihood of Success on the Merits

*HN3* ⚓ The party seeking a preliminary injunction must demonstrate a "reasonable probability of eventual success in the litigation." Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982). In evaluating whether a moving party has satisfied this first part of the preliminary injunction standard, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." Oburn v. Shapp, 521 F.2d 142, 148 (3d

Cir. 1975) (citations omitted). Further, if all other factors of the preliminary injunction test are present, the requirement of likelihood of success can be eased a bit. Constructors Ass'n of W. Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978).

Here, the Court must examine the likelihood of Plaintiff's success in showing it has a reasonable probability of success against Defendants on its claim for breach of contract.

*HN4* Under New Jersey law, the following four elements are necessary in a breach of contract **[11]** claim: "(1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that plaintiff performed its own contractual duties." Hutchinson v. Del. Sav. Bank FSB, et al., 410 F. Supp. 2d 374, 385 n. 21 (D.N.J. 2006). Plaintiff's breach of contract claim is best analyzed under the three provisions of the Agreement Defendant Kimble has allegedly breached.

a) *Non-Compete Provision*

Here, there is clearly the existence of a contract signed by Kimble which contains a specific non-compete provision. Plaintiff argues that Kimble breached this provision when he began his employment with University. Kimble argues that the non-compete provision is invalid because it is unreasonable in scope and does not pertain to a protectible interest of Plaintiff's. Thus Kimble argues that Plaintiff is unable to demonstrate a likelihood of success on the merits of this claim.

*HN5* It is settled law in New Jersey that restrictive covenants are valid in appropriate circumstances. Solari Indus., Inc. v. Malady, 55 N.J. 571, 576, 264 A.2d 53 (1970). A covenant by an employee not to compete with his employer after their employment relationship ceases will be found to **[12]** be enforceable if it is reasonable in light of the totality of circumstances. Id. A covenant that "simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public" will generally be upheld. Id.; Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609, 628, 542 A.2d 879 (1988).

Here, the Agreement in question seeks to protect Plaintiff's "various trade secrets, consisting of code, compilations of data and information, devices, documents, drawings, equipment, files, formulas, inventions, patterns, processes, programs, records, sources of data and information, specifications, and similar items relating to the business of [Scholastic], all of which are owned by [Scholastic] and regularly used in the operation of [Scholastic's] business." (Agreement 4.02(a)). Defendants argue that the Non-Compete Provision does not protect the legitimate interests of Plaintiff and is thus unreasonable.

*HN6*⚓ It is well-settled that a non-compete agreement which seeks only to restrain competition is unreasonable. Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 32-33, 274 A.2d 577 (1971). However, the New Jersey Supreme Court recognizes that **[13]** an "employer has a patently legitimate interest in protecting his trade secrets as well as his confidential business information and he has an equally legitimate interest in protecting his customer relationships. Id. at 33. During oral argument, counsel for Kimble acknowledged that the process which Plaintiff claims it used to implement a change in its operations is confidential. (Tr. 82:2-6). It can thus be said that Plaintiff necessarily has a protectible interest in its revenue/cost analysis since it constitutes confidential business information. The Court need not analyze whether Plaintiff maintains other legitimate interests, since Plaintiff's interest in protecting this undisputedly confidential business information satisfies the test for reasonableness of the Non-Compete Provision.

The Court now turns to whether the Non-Compete Provision is reasonable as to its duration and scope. Here, the Non-Compete Provision prohibits Kimble from obtaining employment with and performing certain services for direct competitors of Plaintiff for twelve months and contains no geographic limitation. *HN7*⚓ In determining reasonableness, New Jersey courts consider duration, geographic **[14]** limits and the scope of activities prohibited. The Cmty. Hosp. Group, Inc. v. More, 183 N.J. 36, 58, 869 A.2d 884 (2005). "Each of those factors must be narrowly tailored to ensure the covenant is no broader than necessary to protect the employer's interests." Id. at 58 (citing Karlin v. Weinberg, 77 N.J. 408, 423, 390 A.2d 1161 (1987). Here, it cannot be said that the one-year limitation is onerous or unreasonable. One year limitations have been upheld by New Jersey courts. See e.g., Balsamides v. Protameen Chems, Inc., 160 N.J. 352, 734 A.2d 721 (1999). Further, the Court does not find the lack of geographic limitation on the Non-Compete Provision unreasonable. Since the telemarketing industry is broad-ranging in its scope by the nature of its business (placing nationwide telephone calls), the geographic scope of the covenant, or lack thereof, is likely a reasonable restriction.

Kimble also argues that the terms of the Non-Compete Provision impose an undue hardship upon him since he is allegedly unable to procure employment within the telemarketing industry. Coskey's Television v. Foti, 253 N.J. Super. 626, 633, 602 A.2d 789 (App. Div. 1992). However, this **[15]** case is distinguishable from the facts of Coskey's Television. Here, the Non-Compete Provision at issue does not render Kimble an "indentured servant" in effect. Id. at 636. Rather, Kimble is restricted only from seeking employment with a direct competitor of Plaintiff's involved in student loan-related telemarketing. Kimble himself certifies that of his over seventeen (17) years of experience within the telemarketing and call center industry, his first exposure to the student loan

sector was in August, 2005. (Kimble Certification 3/7/07 P 1). Thus, at the time of his resignation from his position with Scholastic, Kimble had only a year and a half of experience in this particular niche of the broader industry. (Id.). Accordingly, the Court dismisses Kimble's argument that the Non-Compete Provision imposes an undue hardship upon him.

Next, the Court must determine whether Kimble breached the Non-Compete Provision. Plaintiff is likely to satisfy this element since Kimble undisputedly accepted and began employment with University, a close competitor of Plaintiff who is also engaged in the business of student loan consolidation telemarketing. Plaintiff **[16]** also is likely to establish that it has suffered damages stemming from Kimble's breach of the Non-Compete Provision, since Plaintiff is a new company, lost its highest-paid executive to a direct competitor and has suffered lower revenues since that point in time. For these reasons, the Court determines that Plaintiff has a likelihood of success on the merits of its claim that Kimble breached the Non-Compete Provision.

b) *Non-Solicitation Provision*

Article 5, Section (d) sets forth a non-solicitation provision (the "Non-Solicitation Provision") which prohibits Kimble from soliciting or inducing any of Scholastic's employees to terminate their employment or form an organization competing with Scholastic for a period of one year following termination of employment. (Kimble Cert. Ex. 5).

Here, a valid contract clearly exists between Kimble and Plaintiff which contains a non-solicitation provision. Plaintiff argues that Kimble breached this provision when he solicited two Scholastic employees/affiliated employees to join the employ of University. Kimble denies soliciting these employees and argues that their departure from Plaintiff was mere coincidence. However, given the timing **[17]** of their departure from Scholastic (so close in time to Kimble), and Kimble's counsel's representation on the record before this Court that Kimble and one of the departing employees, Ms. Olive Manlapaz, are close friends, this Court finds it likely that Plaintiff will succeed in demonstrating that Kimble breached the Non-Solicitation Provision. The Court also finds it likely that Plaintiff is likely to succeed in demonstrating the existence of damages stemming from the breach since Plaintiff has had to expend resources to replace the departed employees. Accordingly, the Court determines that Plaintiff likely to succeed on the merits of its breach of contract claim with respect to the Non-Solicitation Provision.

c) *Confidentiality Provision*

Here, a contract exists, signed by Kimble, which contains a specific confidentiality provision. Plaintiff

Scholastic Funding Group LLC v. Kimble, 2014 U.S. Dist. LEXIS 3130...

Case 3:14-cv-06049-FLW-LHG   Document 6-1   Filed 10/09/14   Page 43 of 57 PageID: 153

10/03/14, 11:00 AM

argues that Kimble breached this provision of the Agreement when he obtained and passed along certain confidential information to University, including 1) information pertaining to "leads" purchased and potential customer lists; 2) information related to Plaintiff's relationships with certain lenders; 3) Plaintiff's call transfer **[18]** protocols; 4) Plaintiff's call center and agent scripts; 5) employee training manuals and methods; 6) employee payroll and contact information; and 7) Plaintiff's unique captive call center model/process. Kimble argues that Plaintiff is unable to demonstrate a likelihood of success on the merits on this claim because none of the information cited to by Plaintiff is in fact confidential. At oral argument, the parties agreed that certain information was confidential -- namely, any list of *existing* customers of Plaintiff and the financial methodology used by Plaintiff in its operations analysis which resulted in an overhaul of its operations.

Here, it is established in the record that before hiring Kimble, University utilized a captive call center in Florida, but did not employ one in the Philippines until after Kimble's start with the company. (Tr. 66:24 - 67:15). Further, Plaintiff has cited to an email sent by Kimble to Adam Shorr, a principal of University, which attached a copy of the financial study conducted by Plaintiff regarding its operations. Kimble admits sending this email and attachment, but contends it was with the knowledge of Plaintiff and was without any objection. **[19]** (Kimble Cert. PP 72-73). Based upon the timing of this email, Kimble's acceptance of a position with University despite his current employment with Plaintiff, and University's subsequent switch to utilization of a call center in the Philippines, this Court determines that Plaintiff is likely to succeed in proving that Plaintiff has breached the Confidentiality Provision. The Court also finds that Plaintiff is likely to succeed on the merits that it has suffered damages as a result of this breach. As a new company with financial struggles, it is likely that having its direct competitor gain access to its confidential business information will likely result in lower revenues, thus causing damages. Accordingly, Plaintiff has demonstrated that it has a likelihood of success on the merits on its breach of contract claim with respect to the Confidentiality Provision.


## 2. Irreparable Harm

*HN8* In order to satisfy the second requirement for a preliminary injunction, the movant must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). **[20]** In

the context of non-competition agreements, irreparable injury may be shown if the former employee may "avail himself of sensitive product strategies both as to development and marketing," which may be of extreme value to the competitor. Bausch & Lomb Inc. v. Smith, 630 F.Supp. 262, 265 (W.D.N.Y.1986). See also Manhattan Assocs. v. Ruderman, 2005 U.S. Dist. LEXIS 45132, 2005 WL 2290297 (D.N.J. 2005). Furthermore, "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998).

Here, Plaintiff contends that it has satisfied the irreparable harm requirement because the disclosure of confidential and proprietary information can constitute the basis for damages irreparable by way of money damages. Plaintiff contends that it has "direct evidence that confidential information was taken, and, given Defendants' intimate knowledge of and possession of Plaintiff's trade secrets, confidential, proprietary, and sensitive business and technical information, it is only a matter of time before Defendants will inevitably utilize and disclose **[21]** Plaintiff's confidential information." (Pl. Br. at 28). Notably, however, Plaintiff also concedes that "it appears [Defendants] have already done so." (Id.). That is, Plaintiff appears to concede that Defendants have already utilized and disclosed Plaintiff's allegedly confidential information. This appears to indicate that any harm, if realized, is already completed and cannot thus be considered immediate.

Kimble argues that there is no risk of further harm in the absence of an injunction because Kimble is no longer employed by Scholastic and thus has no access to Scholastic's allegedly confidential information or employee contact information. (Kimble Br. Opp'n at 28). Kimble further argues that any harm sustained can be remedied by way of money damages. (Id.).

Defendant University and Globex argue that the Court must deny Plaintiff's motion for a preliminary injunction because Plaintiff is unable to demonstrate that it possesses protectible proprietary information and thus cannot establish irreparable harm. (University Br. Opp'n at 11). These Defendants argue that Plaintiff has made only conclusory statements regarding irreparable harm which are insufficient. (Id. **[22]** at 30). To the extent that Plaintiff argues it has lost business opportunities or customers, Globex and University argue that such losses can clearly be remedied by an accounting and subsequent money damages. (Id.). These Defendants argue that Kimble has no specific technical knowledge or other confidential information stored in his brain, nor has Plaintiff established that imminent disclosure would be harmful.

_HN9_ The Third Circuit has held that:

**more than a <u>risk</u> of irreparable harm** must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury', or a 'presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights' … '[i]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do.

Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir.1980) (citations omitted) (emphasis added). *HN10*⚓ The moving **[23]** party must demonstrate an **"imminent threat of disclosure."** E.R. Squibb & Sons, Inc. v. Hollister, Inc., 1991 U.S. Dist. LEXIS 1395, 1991 WL 15296 (D.N.J. 1991) (emphasis added). "[I]n the context of of determining whether a threat of disclosure exists, it is but a finding as to the probable future consequences of a course of voluntary action undertaken by the defendants. Courts are frequently called upon to draw such conclusions based on a weighing of the probabilities, and while a conclusion that a certain result will probably follow may not ultimately be vindicated, courts are nonetheless entitled to decide or 'predict' the likely consequences arising from a given set of facts and to grant legal remedies on that basis." Nat'l Starch and Chem. Corp. v. Parker Chem. Corp., 219 N.J. Super. 158, 163, 530 A.2d 31 (App. Div. 1987).

*HN11*⚓ To demonstrate irreparable harm, the moving party must show more than a mere risk that information will be disclosed -- the party must instead demonstrate a clear threat of misappropriation or imminent threat of disclosure. E.R. Squibb & Sons, 1991 U.S. Dist. LEXIS 1395, 1991 WL 15296, *10; PepsiCo, Inc. v. Redmond, 54 F.3d 1262 (7th Cir. 1995).

Here, **[24]** the Court will analyze whether Plaintiff has met the requirement of irreparable harm for each type of injunctive relief requested.

a) *Enjoining Kimble from Violating the Non-Compete Provision*

Plaintiff argues that if Kimble is not restrained from competing with Plaintiff, it will suffer loss of goodwill and loss of control over its reputation with respect to its customers and competitors. *HN12*⚓ This Circuit recognizes that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998). Should Kimble start communicating with vendors and other business entities on behalf of University, when just months ago he was likely contacting these same entities on behalf of

Plaintiff, there is a risk that this will affect these parties' perception of Plaintiff's industry reputation. Accordingly, the Court finds that if it does not grant the relief requested by Plaintiff in enjoining Kimble from violating the Non-Compete Provision, Plaintiff will suffer an immediate, irreparable harm.

b) *Enjoining Kimble from Violating the Non-Solicitation* **[25]** *Provision*

Plaintiff seeks to restrain Kimble from soliciting or inducing employees of Plaintiff or any affiliate/subsidiary to terminate their employment. Plaintiff argues that if Kimble is not restrained from violating the Non-Solicitation Provision Plaintiff will lose key employees to an industry competitor, creating the risk of immediate, irreparable harm. However, Kimble maintains that he has not, and is not, soliciting employees of Plaintiff.

For reasons similar to those just discussed, the Court determines that if Kimble if not restrained from violating the Non-Solicitation Provision, Plaintiff's reputation and goodwill will be damaged since its competitors and clients will likely view any "defection" of employees to a competitor in a negative light. Further, since Plaintiff is a relatively young company, any harm to its reputation will be amplified. Accordingly, the Court finds that if Kimble is not enjoined from violating the Non-Solicitation Provision, Plaintiff faces a risk of immediate, irreparable harm to its goodwill and reputation.

c) *Enjoining/Restraining Defendants from Obtaining, Using and/or Divulging Plaintiff's Confidential Information*

Plaintiff seeks **[26]** to restrain/enjoin Defendants from directly or indirectly obtaining, using, transmitting, divulging or communicating in any fashion or manner Plaintiff's confidential information, including any documents containing or evidencing confidential information. Kimble argues that to the extent this relief seeks to restrain him from obtaining, transmitting, or communicating any alleged confidential information, such relief is moot since he no longer has access to same. Defendants University and Globex argue that there is no risk of immediate, irreparable harm because they do not have any such information in their possession so there is no risk of them using, transmitting, divulging, or communicating same.

During argument, the Court questioned Plaintiff's counsel at length regarding the element of immediate irreparable harm with respect to the Confidentiality Provision. The Court asked Plaintiff's counsel how a risk of immediate harm could exist if Kimble had, as alleged, already disclosed the methodology and the lists of existing customers to University. (Tr. 13:7 - 15:2). However, counsel

focused only on the irreparable portion of the analysis, and did not fully address the Court's line **[27]** of questioning. (Tr. 15:3 - 20). *HN13* With respect to confidential information, the moving party must demonstrate an "imminent threat of disclosure," E.R. Squibb & Sons, 1991 U.S. Dist. LEXIS 1395, 1991 WL 15296 at *10, yet even the Plaintiff's Verified Complaint alleges that Kimble has already disclosed the information at issue, rendering any "threat" of disclosure moot. While the Court has reviewed the cases cited by Plaintiff during argument in detail, the Court finds that these cases only lend support to its argument of irreparability, not immediacy. Accordingly, since there exists no imminent threat of disclosure as to Plaintiff's alleged confidential and protectible information since same has been disclosed, the Court finds that Plaintiff fails to make such the requisite showing of immediacy.

*HN14* This Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits elements of the standard for preliminary injunction, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d Cir. 1990) **[28]** (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir.1982)); see also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989); Morton v. Beyer, 822 F.2d 364, 367 (3d Cir.1987); Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 151 (3d Cir.1984). Thus, Plaintiff's motion for a preliminary injunction is denied to the extent that it seeks injunctive relief seeking to enforce the Confidentiality Provision.

d) *Enjoining/Restraining Defendants From Doing Business With Any Existing or Potential Clients of Plaintiff.*

Plaintiff seeks to enjoin/restrain Defendants from directly or indirectly doing business with (which shall include servicing, selling, and/or soliciting) any, clients, affiliates, partners or prospects to become any of the foregoing whom Plaintiff serviced, worked with, sold to, and/or solicited during Kimble's employment with Plaintiff. As discussed above, the Court finds that Plaintiff has failed to demonstrate a lack of immediate, irreparable harm with respect to disclosure of its client lists since same have already been disclosed. **[29]** Thus, to the extent that the relief listed above references clients of Plaintiff, the Court declines to impose such relief. To the extent that the relief references affiliates, partners or prospects of Plaintiff, such relief is denied for failure to demonstrate that any harm suffered by Plaintiff from such solicitation is both an immediate threat and irreparable by way of money damages. Plaintiff concedes that its prospective clients are drawn from a common database to which all similarly situated companies have access. Thus, Plaintiff is unable to establish

that it will suffer immediate, irreparable harm without this relief being imposed since all companies, not only Kimble and University, have access to these customers' information.

With respect to the "affiliates" and "partners" of Plaintiff, the Court finds that Plaintiff has failed to establish that it will be irreparably harmed without injunctive relief. In fact, Plaintiff has not clarified who these entities *are,* let alone how it will be irreparably harmed if the relief requested is not imposed. **HN15** A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp., 995 F.2d at 1568. **[30]** Thus, without these parties being defined, let alone specifically briefed by Plaintiff, the Court is unwilling to impose injunctive relief restraining Defendants from doing business with same. Accordingly, Plaintiff's motion for a preliminary injunction is denied to the extent that it seeks injunctive relief restraining/enjoining Defendants from directly or indirectly doing business with (which shall include servicing, selling, and/or soliciting) any, clients, affiliates, partners or prospects to become any of the foregoing whom Plaintiff serviced, worked with, sold to, and/or solicited during Kimble's employment with Plaintiff since Plaintiff has failed to establish one of the requisite elements for an injunction.

e) *Compelling Defendants to Cease from Using, and to Return, All of Plaintiff's Property in Their Possession, Including any Confidential Information.*

The State Court TRO ordered Kimble, University and Globex "to cease from using and return forthwith any and all of Plaintiff's property, including, but not limited to Plaintiff's Confidential Information, in their [possession], custody or control." Consequently, the Court asked the parties during argument whether **[31]** they had complied with this portion of the State Court TRO. All Defendants represented to the Court that everything had been turned over to counsel and that they no longer retained any information alleged as Confidential Information or other property belonging to Plaintiff. (Tr. 6:10-25 - 7:1). Further, in its submissions to the Court in conjunction with its motion, Plaintiff does not specifically identify any document or information it claims has been withheld by Defendants in violation of the State Court TRO. Accordingly, the Court deems Plaintiff's motion for a preliminary injunction moot to the extent that it requests Defendants to cease from using and return any of Plaintiff's information in their possession.

## 3. Balancing of Harms & the Public Interest

The Court must next analyze the remaining prerequisites for imposition of preliminary injunctive

relief: the possibility of harm to other interested persons from the grant or denial of the injunction and the public interest. Ortho Pharm., 882 F.2d at 812-13; see also Wright Med. Tech., Inc. v. Somers 37 F.Supp.2d 673 (D.N.J. 1999).

With respect to the balancing of harms, the Court determines **[32]** that this factor weighs in favor of Plaintiff. It is undisputed that Kimble left Plaintiff's employ on his own accord. Although Kimble now attempts to justify this decision with allegations pertaining to misconduct of Plaintiff in the Philippines and with respect to certain other of its business practices, these concerns are generally unsubstantiated and are disputed by Plaintiff. Further, as the Court noted during oral argument, such alleged misconduct by Plaintiff and alleged harm to Kimble would exist even in the absence of the pending motions and civil action herein. (Tr. 32:19 - 34:8). Thus, the Court determines that these allegations are irrelevant to its analysis. Plaintiff, University and Globex are all companies attempting to establish a foothold in the student loan servicing telemarketing industry. If the Court were to allow Kimble to resume employment with University, this would undoubtedly cause hardship for Plaintiff which outweighs any harm to Kimble. Notably, Kimble is not barred from working in the entire telemarketing industry, only from performing similar services for a direct competitor of Plaintiff's.

Further, the Court notes that if, as Kimble says is true, he **[33]** is not soliciting current employees of Plaintiff to join University, then this Court's enforcement of the Non-Solicitation Provision via the present injunction will cause no hardship to Kimble. However, if this Court were to decline to enforce this provision of the Agreement, Plaintiff could suffer hardship as the result of losing key employees to a close competitor. Kimble clearly agreed to be bound by this Agreement and represents to the Court that he has not, is not, and will not, solicit Plaintiff's employees. As such, the balance of harms weighs in Plaintiff's favor.

Although this matter is a private dispute between private parties, the Court nevertheless finds that issuance of an injunction is in the public interest. See Score Board Inc. v. Upper Deck Co., 959 F.Supp. 234, 240 (D.N.J. 1997). *HN16* While the public has an interest in free competition, its interest is also furthered by protection of private contractual rights. "Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships." Wright Med. Tech., Inc. v. Somers, 37 F.Supp.2d at 684 **[34]** (citing AmeriGas Propane, Inc. v. Crook, 844 F.Supp. 379, 390 (M.D.Tenn. 1993). The Court determines that the public interest is best served by enforcement of the Agreement via preliminary injunctive relief.

Accordingly, the Court finds that Plaintiff has satisfied the final two elements of the standard for issuance of a preliminary injunction with respect to the relief not already denied _supra._ The specific relief will be set forth in an Order accompanying this Opinion.

## C. Defendant's Motion for Preliminary Injunction

Kimble requests the Court to impose the following preliminary injunctive relief:

> 1) enjoin Scholastic from enforcing Article 5 of the Agreement, except that Kimble shall not solicit or induce any of Scholastic's employees to terminate their employment in order to become employed with University or for any other reason; and

> 2) declare that Kimble may become employed with University if these parties so choose to resume their employment relationship.

This Court denied Kimble's prior request for these restraints to be imposed on a temporary basis based upon its determination that Kimble had failed to demonstrate the risk **[35]** of immediate, irreparable harm as required by the Third Circuit. The Court found that since the risk posed to Kimble was his alleged inability to gain employment, such harm was purely monetary in nature, and thus fully reparable by way of later money damages. The Court finds that nothing in the briefing submitted by Kimble in conjunction with the motion discussed herein nor argued by his counsel during oral argument has altered this finding. Even in the face of the current injunction now imposed by the Court, Kimble remains free to seek and gain employment in the broader telemarketing industry so long as he does not seek employment with a competitor of Plaintiff as defined in the Non-Compete Provision. Kimble's arguments that he is unable to gain employment in the broader telemarketing industry because Plaintiff's actions have damaged his professional reputation is unsupported. Kimble has not come forward with evidence that he has sought or been rejected by other employers, let alone that any rejection was caused by the actions of Plaintiff. Accordingly, Kimble's motion for a preliminary injunction is hereby denied.

## **CONCLUSION**

For the reasons set forth in this Opinion, **[36]** Plaintiff's motion for a preliminary injunction is

granted in part and denied in part. Defendant Kimble's motion for a preliminary injunction is denied. An appropriate Order accompanies this Opinion.

DATED: April 24, 2007

/s/ Jose L. Linares ▼

United States District Judge

---

**Footnotes**

1 ▼ All citations to the Transcript are to the record of the oral argument held April 5, 2007.

---

Jump to ▼        

LexisNexis·

# B

**COPY SENT**

Ari D. Schneider, Esq. - 021612007
The Busch Law Group LLC
402 Main Street, Suite 203
Metuchen, New Jersey 08840
Attorneys for Plaintiff



FILED

SEP 15 2014

CHANCERY CHAMBERS
SOMERVILLE NJ

HARBORTOUCH PAYMENTS, LLC,
f/k/a UNITED BANK CARD, INC.

              Plaintiff,

v.

DENALI STATE BANK, JOHN
DOES (1-10) and JANE DOES (1-10),
fictitious persons; and ABC
CORPORATIONS (1-10), fictitious
business entities,

              Defendant.

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: HUNTERDON COUNTY
DOCKET NO.  C-14019-14

CIVIL ACTION

**ORDER TO SHOW CAUSE**

**THIS MATTER** being opened before this Court by Plaintiff, Harbortouch Payments, LLC, f/k/a United Bank Card, Inc. ("Plaintiff"), by and through its attorneys, The Busch Law Group (Ari D. Schneider, Esq. as counsel of record), on Plaintiff's application for a preliminary injunction pursuant to Rule 4:52-1 and based upon the facts set forth in the Verified Complaint and supporting Certification filed herewith; and notice being provided to Defendant, Denali State Bank ("Defendant"); and for good cause being shown;

**IT IS** on this _15_ day of September 2014, hereby

**ORDERED** that on ~~September~~ _oct_ _17_, 2014, at _9_ (AM/~~PM~~), or as soon thereafter as counsel may be heard, Defendant shall appear before the Honorable Edward M. Coleman P.J.Cv. of the Hunterdon County Vicinage of the Superior Court

of New Jersey located at 40 North Bridge Street, Somerville, New Jersey, 08776 and show cause why Judgment should not be entered for:

(a) A temporary, preliminary, and permanent injunction against Denali State Bank, preventing them from soliciting and converting additional merchants, as well as engaging in other activities that may impose financial risk and undue economic hardship and/or damage to the goodwill of Plaintiff;

(b) Compensatory Damages to the extent same are not to be addressed in final and binding arbitration through the American Arbitration Association ("AAA") as required by the Agreement;

(c) Attorneys' fees, interest and costs of suit to the extent same are not to be addressed in final and binding arbitration through the American Arbitration Association ("AAA") as required by the Agreement; and,

(d) Such other relief as the Court deems just and proper;

and it is

**FURTHER ORDERED** that pending the return date herein, Defendant is hereby temporarily restrained and enjoined from taking any action that would serve to solicit, *to be on heard on the return date* convert and/or impose financial risk and/or undue economic hardship to any of Plaintiff's Merchants and/or tortuously interfere with Plaintiff's contractual relationships with its Merchants, and it is

**FURTHER ORDERED** that:

1. Defendant may move to dissolve or modify the temporary restraints herein contained on two (2) days' notice to Plaintiff's counsel; and

2. A copy of this Order to Show Cause, Verified Complaint, Certification of Terrence Sullivan, Esq., Brief in Support of Order to Show Cause and any other documents submitted in support of this application be served upon

Defendant within _4_ days of the date hereof in accordance with R. 4:4-3 and R. 4:4-4, this being original process; and

3.  Plaintiff shall file with this Court proof of service of the pleadings upon Defendant no later than three (3) days before the return date; and

4.  Defendant shall file and serve a written Answer or other responsive pleadings to this Order to Show Cause and the relief requested in the Verified Complaint, as well as proof of service of same upon Plaintiff's counsel, by September _30_, 2014. The Answer or other responsive pleading(s), as the case may be, must be filed with the Clerk of the Superior Court of New Jersey in Hunterdon County and a copy of the papers must be sent directly to the chambers of the Honorable Edward M. Coleman P.J.Cv.; and

5.  Plaintiff must file and serve any written reply to Defendant's Answer or other responsive pleading, if applicable, by ~~September~~ _Oct_ _6_, 2014. The reply papers must be filed with the Clerk of the Superior Court of New Jersey in Hunterdon County and a copy of the reply papers must be sent directly to the chambers of the Honorable Edward M. Coleman, P.J.Cv.; and

6.  If Defendant does not file and serve any opposition to this Order to Show Cause, the application will be decided on the papers on the return date and relief may be granted by Default, provided that Plaintiff files a proof of service and proposed form of Order at least three (3) days prior to the return date; and

7.  If Plaintiff has not already done so, a proposed form of Order addressing the relief sought on the return date (along with a pre-paid return envelope) must be submitted to the Court no later than three (3) days before the return date; and

8.  Defendant shall take notice that Plaintiff filed a lawsuit against it in the Superior Court of New Jersey. The Verified Complaint attached to this Order to Show Cause states the basis of the lawsuit and the nature of the relief sought; and

9.  If Defendant disputes the Verified Complaint it must file a written Answer and proof of service before the return date of this Order to Show Cause; and

10. These documents must be filed with the Clerk of the Superior Court of New Jersey in Hunterdon County, addressed as follows: "Superior Court, Chancery, General Equity, Hunterdon County Courthouse, 40 North Bridge Street, Somerville, New Jersey, 08776. A filing fee of $135.00, payable to "Treasurer, State of New Jersey" must be included. Defendant must also send a copy of its Answer to Plaintiff's counsel whose name and address appear above. A telephone call will not protect Defendant's rights; and

11. Defendant must file and serve its Answer or judgment may be entered against it for the relief Plaintiff demands by Default. An opposition to the Order to Show Cause is not an Answer and Defendant must file both; and

12.  The Court will entertain argument, but not testimony, on the return date of the Order to Show Cause, unless the Court and parties are advised to the contrary no later than __3__ days before the return date.

( ) Opposed
( ) Unopposed

EDWARD M. COLEMAN, P.J.Ch.