UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARBORTOUCH PAYMENTS, LLC, f/k/a UNITED BANK CARD INC.<br><br>   Plaintiff,<br><br>   v.<br><br>DENALI STATE BANK,<br><br>   Defendant. | Civil Action No. 14-6049 (FLW)<br><br>**MEMORANDUM OPINION** |

WOLFSON, District Judge.

This is a breach of contract action brought by plaintiff Harbortouch Payments, LLC, ("Plaintiff") against Denali State Bank ("Defendant").[1] Presently before the Court are the following: (1) a motion by Plaintiff for a preliminary injunction; and (2) Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, dismiss the matter in favor of arbitration. For the reasons below, Defendant's motion is granted and Plaintiff's motion is denied.

I. BACKGROUND

Plaintiff is a provider of merchant services, specifically, "Point of Sale" systems, electronic cash registers and credit card processing terminals. Compl. ¶ 1. Plaintiff enters into agreements with merchants (referred to herein at times as "Merchant Agreements") to provide these services on an ongoing basis. *Id.*

---

[1] This matter was recently reassigned to the undersigned upon the retirement of the Honorable Joel A. Pisano, United States District Judge.

In the course of its business, Plaintiff also enters into referral agreements with other businesses who can refer merchants (*i.e.*, potential clients) to Plaintiff.  *Id.*  Defendant, a bank located in Fairbanks, Alaska, entered into such an agreement with Plaintiff's predecessor, United Bank Card Inc. ("United Bank Card").  *Id.* at ¶ 2, 6-7.  Plaintiff and United Bank Card merged on March 27, 2014.  Plaintiff was the surviving corporation of the merger and asserts that it is, therefore, party to the relevant agreements by operation of law.  ECF No. 13 at ¶ 6; ECF No. 15 at 9.

The parties initially entered into a "Referral Bank Agreement" (the "RBA") on December 21, 2006.  *Id.* at ¶ 6.  Thereafter, the parties entered into a Financial Institution Agreement (the "FIA"), which became effective November 30, 2012.  *Id.* at ¶ 7.  The RBA and FIA contain the same relevant provisions, and it is alleged that Defendant is equally bound under both agreements.  The complaint, and, therefore, the Court herein, refers to the RBA and FIA collectively as the "Agreement."

The Agreement "required Defendant to use its best efforts to locate, investigate and refer potential merchants to Plaintiff."  *Id.* at ¶ 9.  Defendant made a number of referrals to Plaintiff that ultimately resulted in Merchant Agreements between various merchants and Plaintiff.  *See id.* at ¶¶ 18-38.  In return for its referrals, Defendant received commissions and on-going residual payments from Plaintiff.  *Id.* at ¶ 10, 13.  The Agreement terminated November 1, 2013, after Defendant gave notice to Plaintiff of its intention not to renew the Agreement.  *Id.* at ¶ 7.

The complaint alleges that beginning in or about April 2014, several merchants with whom Plaintiff had entered into Merchant Agreements cancelled their accounts with Plaintiff.  According to Plaintiff, the cancellations occurred after Defendant referred the merchants to another service provider.  Compl. ¶¶ 17-37.  The complaint specifically references the following

five accounts: (1) The Electrician LLC, which accounted for an average monthly revenue to Plaintiff of $233.67; (2) 40-Mile Air Ltd., with average monthly revenue of $1,008.71; (3) RWR Air Inc., with average monthly revenue of $671.00; (4) Industrial Service Corp., with average monthly revenue of $525.83; and (5) Hompesch & Evans, APC, with average monthly revenue of $586.72.

Plaintiff alleges that Defendant's actions constituted a breach of certain provisions in the Agreement prohibiting Defendant from soliciting and converting Plaintiff's merchants and from engaging in conduct imposing financial risk or undue economic hardship on Plaintiff. Under the Agreement, it was an "Event of Default" for Defendant to "engage[] in activities which may impose financial risk … or which result in undue economic hardship and/or damage to the goodwill" of Plaintiff. Agreement § 7.3. It is also an Event of Default for Defendant "to make any attempt to convert any Merchant from [Plaintiff] to any other entity performing services similar to [Plaintiff]." *Id.* Further, the Agreement provides that after termination of the Agreement, the "[Defendant] will not solicit any Merchant to terminate a Merchant Agreement for any reason after termination of this Agreement."

At the time of the filing of the complaint, Plaintiff had 118 active and 6 seasonal[2] merchant accounts that had been referred by Defendant. *Id.* at ¶ 41. According to Plaintiff, these merchants have a relationship with Defendants, and Plaintiff fears Defendant will seek to convert these merchants to a different service provider.

The Agreement contains an arbitration provision, which provides that "[a]ny dispute or claim arising out of, or in connection with this Agreement will be settled by final and binding arbitration to be held in New Jersey in accordance with the commercial rules of the American

---

[2] Seasonal accounts are those that are temporarily inactive but are reactivated during the business season. Compl ¶ 63.

Arbitration Association." Agreement, § 10.13.  In accordance with this provision, Plaintiff has initiated an arbitration proceeding against Defendant.

The Agreement also contains a forum selection clause designating the "federal or state courts of New Jersey" as the forum for adjudicating any disputes "arising ou[t] of or in connection" with the Agreement.  Agreement, § 10.7.  Plaintiff commenced the instant matter in New Jersey state court, and it was subsequently removed to this Court.  In this action, Plaintiff seeks an injunction prohibiting Defendant "from soliciting and converting" the remaining 124 merchants and from "engaging in other activities that may impose financial risk and undue economic hardship and/or damage the goodwill of Plaintiff" as well as compensatory damages "to the extent the same are not addressed" in the pending arbitration.  Compl. at p. 11.

## II.  ANALYSIS

### 1. Personal Jurisdiction

Defendants moves for dismissal under Federal Rule of Civil Procedure 12(b)(2), arguing that the Court lacks personal jurisdiction over Defendant, a bank chartered in Alaska with its principal place of business in Alaska.  Defendant argues that it has insufficient contacts with the State of New Jersey for the Court to exercise jurisdiction.

Where, as here, a federal court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, a "'federal district court may assert personal jurisdiction over a non-resident of the state in which the court sits to the extent authorized'" by that state's law.  *Fisher v. Teva PFC SRL*, 212 Fed. Appx. 72, 75 (3d Cir. 2006) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 436 (3d Cir. 1987)). To that end, the New Jersey Long-Arm Statute grants jurisdiction over non-residents to the full extent of the Due Process Clause of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir.2004) (citing N.J. Court Rule 4:4–4(c)).

Under the Due Process Clause of the Fourteenth Amendment, a federal court has personal jurisdiction over a non-resident defendant only where the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Provident Nat'l Bank*, 819 F.2d at 436–37 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Two types of personal jurisdiction exist: general and specific. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Not long ago, the Supreme Court refined the standard for finding general jurisdiction in *Daimler AG v. Bauman*, --- U.S. ---, ---, 134 S.Ct. 746, 751, 187 L.Ed.2d 624 (2014). According to *Bauman*, general jurisdiction refers to a court's power to "hear any and all claims" against an out-of state entity or person when its "affiliations with the State are so continuous and systematic as to render [it] at home in the forum state." *Id.* (internal quotation marks and citation omitted) (emphasis added). By contrast, specific jurisdiction exists when the plaintiff's claim arises out of the defendant's activities within the forum such that the defendant could reasonably anticipate being haled into the state's courts. *Vetrotex Certainteed Corp. v. Consl. Fiber Glass Prods. Co.*, 75 F.3d 147 (3d Cir.1995). When a jurisdictional defense is raised, "the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987) (citing *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir.1985)).

In opposition to Defendant's motion, Plaintiff points to the forum selection clause in the Agreement in support of its assertion that the Court may exercise personal jurisdiction over Defendant. Personal jurisdiction is waivable, and a party can give "express or implied consent to

5

the personal jurisdiction of the court" through a "variety of legal arrangements," which include forum selection clauses in agreements executed by the parties. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (quoting *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)) (internal quotation marks omitted). In the instant matter, the parties' Agreement provides that "[t]he exclusive forum and venue for the adjudication of any rights, claims or disputes arising out of or in connection with this Agreement shall be the federal and state courts of New Jersey." Agreement § 10.7.

It is well established that a forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). To show that a forum selection clause is unreasonable, the resisting party must establish: "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Cadapult Graphic Systems, Inc. v. Tektronix, Inc.*, 98 F.Supp.2d 560, 564 (D.N.J. 2000) (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)).

In their reply to Plaintiff's argument that the forum selection clause permits this Court's exercise of personal jurisdiction over Defendant, Defendant advances the sole argument that Plaintiff should not be permitted to "benefit" form the forum selection clause. Defendant asserts that the merger between United Bank Card and Plaintiff effected an assignment[3] of the Agreement and, although the Agreement expressly permitted assignment by United Bank Card,

---

[3] Because no party disputes the issue, the Court assumes, without deciding this issue, that the merger effected an assignment.

6

the Agreement required United Bank Card to provide notice to Defendant within 60 days of any assignment. RBI and FIA at § 10.1. Defendant states that Plaintiff failed to provide timely notice and, as a result, "cannot seek to benefit from the choice of forum language in the United Bank Card-Denali Agreement." ECF No. 16 at 3. Notably, Defendant does *not* argue that failure to provide notice invalidated any purported assignment or the Agreement. Defendant is simply arguing that because Plaintiff allegedly breached the Agreement by failing to provide notice of an assignment within the 60-day window, it should not be permitted to enforce the forum selection clause.

In support of its argument, Defendant cites just a single case, *Jon Feingersh Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 13-2378, 2014 WL 716723 (E.D. Pa. Feb. 25, 2014). This case does not, however, support Defendant's that Plaintiff should not "benefit" from the parties' choice of forum. The case and, in particular, the passage quoted by Defendant, stands for the unremarkable proposition that a plaintiff bringing a breach of contract action must abide by the forum selection clause contained in the contract that the plaintiff wishes to enforce. It does not support the proposition that a party who allegedly breached a contract cannot "benefit" from the forum selection clause contained in the contract allegedly breached. In fact, *Jon Feingersh Photography* supports precisely the opposite conclusion. In that case, a breach of contract action, the district court enforced a forum selection clause on motion of the defendant (the allegedly breaching party) and transferred the case to a different venue.

The forum selection clause in the Agreement is unambiguous and Defendant has not shown it to be unenforceable. Defendant, having agreed to litigate disputes under the Agreement

in this forum, the Court may exercise personal jurisdiction over Defendant. Defendant's motion to dismiss under Rule 12(b)(2) is therefore denied.

*2. Injunctive Relief*

Defendant next argues this matter should be dismissed in favor of the arbitration that Plaintiff has commenced pursuant to the arbitration clause in the agreement. Plaintiff counters that the arbitration notwithstanding, it has the ability to seek injunctive relief from this Court. Plaintiff is correct that a district court has the authority to grant injunctive relief in an arbitrable dispute, so long as the prerequisites for such relief are satisfied. *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989). Defendant does not dispute Plaintiff's right to seek injunctive relief, but rather contends that the matter should be dismissed because Plaintiff cannot show entitlement to the preliminary injunctive relief sought. The Court, therefore, turns next to Plaintiff's motion for a preliminary injunction.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Figueroa v. Precision Surgical, Inc.*, 423 Fed. Appx. 205, 208 (3d Cir. 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)). It is well-settled that a party seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). All four factors must favor preliminary relief. *Lanin v. Tenafly*, 515 Fed. Appx. 114, 117 (3d Cir. 2013) (citing *Duraco Products, Inc. v. Joy Plastic Enterprises*, 40 F.3d 1431, 1438 (3d Cir. 1994). "A plaintiff's failure to establish *any* element in its favor renders a preliminary

injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (emphasis supplied).

The Court finds at the threshold that Plaintiff has failed to establish the element of irreparable harm, which the Supreme Court has described as "the traditional prerequisite to obtaining an injunction." *See Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971). In order to demonstrate irreparable harm, a plaintiff must show "potential harm which cannot be redressed by a legal or an equitable remedy following a trial," and "the preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982); *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 356 and n.9 (3d Cir. 1980)). Irreparable harm exists only when the injury is "of a peculiar nature, so that compensation in money damages cannot atone for it." *Goadby v. Phila. Elec. Co.*, 639 F.2d 117, 121 (3d Cir. 1981) (stating that irreparable harm exists only when "damages are difficult to ascertain or are inadequate"). Thus, the crucial question here is whether absent an injunction money damages would provide an adequate remedy at law for Plaintiff, as "[t]he availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). The Court finds that money damages would provide an adequate remedy for Plaintiff.

There are 124 merchants that were referred by Defendant that presently have accounts with Plaintiff. Plaintiff claims that it would be irreparably harmed if it were to lose any of these merchant accounts because "of the difficulty in ascertaining the monetary value of [the] lost business." ECF No. 6-1 at 17. Plaintiff claims that it has a "relationship of trust" with each

merchant and that it would be difficult or impossible to regain any accounts that are lost. *Id.* Plaintiff also alleges, albeit in a conclusory fashion, that its reputation and goodwill would suffer if it lost merchants. *Id.*

The heart of Plaintiff's argument for an injunction is that it stands to lose merchants and, therefore, profits. Economic loss is not irreparable, as the harm flowing from any such loss is compensable with money damages. The Third Circuit has consistently held that economic injury does not constitute irreparable harm necessary to support an award of injunctive relief. *See*, *e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994) ("Economic loss does not constitute irreparable harm...."). As both the Supreme Court and Third Circuit have noted, "it seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Instant Air Freight*, 882 F.2d at 801 (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1964). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

Despite Plaintiff's assertions to the contrary, there would appear to be no difficulty in ascertaining compensatory damages here should Defendant become liable to Plaintiff for the alleged potential harm. In *Instant Air Freight*, the Third Circuit held that there was no irreparable harm where the defendant terminated a longstanding contractual relationship with plaintiff, because any resulting harm from the termination of the parties' contract could be estimated based on the prior business generated through the relationship. *Id.* at 798, 802. Likewise, the resulting harm from the termination of any Merchant Agreements would be ascertainable based on the prior business generated by that account. Indeed, this is clearly shown by the allegations in the complaint. The complaint describes five merchant accounts that were

10

allegedly "converted" by Plaintiff to other merchant services providers. The complaint details the length of time each merchant had an account with Plaintiff along with the average monthly income Plaintiff earned from each account down to the penny. Compl. ¶¶ 18-37.

Finally, Plaintiff has not made a showing of irreparable harm based upon harm to reputation or a loss of goodwill. Plaintiff's bald assertion that "the loss of Merchants as customers causes Plaintiff's reputation to suffer" is simply insufficient to support a finding of irreparable harm. ECF No. 6-1 at 16. Furthermore, Plaintiff's reliance on *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800 (3d Cir. 1998) is misplaced. *Id.* at 805 (noting that "grounds for irreparable injury includes loss of control of reputation, loss of trade, and loss of goodwill"). *Pappan* is a trademark case and relied on the special harms inherent in claims of trademark infringement, which are not present here. *Id.* (finding irreparable harm where there was the likelihood that consumers would be confused by similar trademark).

Consequently, the Court finds Plaintiff is not entitled to a preliminary injunction.[4] Plaintiff's motion for preliminary injunctive relief is, therefore, denied.

3. *Arbitration*

Under the Federal Arbitration Act ("FAA"),

[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

---

[4] Because Plaintiff has failed to establish the element of irreparable harm, the Court need not examine the other prerequisites to injunctive relief. *See Lanin*, 515 Fed. Appx. at 118 (affirming denial of preliminary injunction on the basis of failure to show irreparable harm, and noting that because all four factors must favor preliminary relief, it was unnecessary to reach other factors).

11

9 U.S.C. § 3.  As noted earlier, the Agreement contains an arbitration provision that requires "[a]ny dispute or claim arising out of, or in connection with this Agreement" to be submitted to arbitration.  Agreement, § 10.13.  Indeed, Plaintiff has already commenced an arbitration action against Defendant seeking compensatory and injunctive relief.  ECF No. 12-1, Ex. A.  The only grounds Plaintiff has raised against dismissal of this matter in favor of arbitration is its request for preliminary injunctive relief.  ECF No. 15 at 9-11.  The Court having found that Plaintiff is not entitled to the issuance of a preliminary injunction, there is no further basis for this Court to exercise authority over this matter.

The FAA speaks in terms of a "staying" of an action pending arbitration.  *See* 9 U.S.C. § 3.  Here, neither party has requested that this matter be stayed pending arbitration.  Because all of Plaintiff's remaining claims are subject to arbitration, the Court sees no reason why a stay would be warranted.  *FlexiVan Leasing, Inc. v. Through Transport Mut. Ins. Ass'n Ltd.*, 108 Fed. Appx. 35, 38 (3d Cir. 2004) (affirming district court's dismissal of suit where all claims were arbitrable and moving party did not request a stay); *Rhodia Inc. v. Bayer Cropscience Inc.*, Civ. No. 04–6424, 2007 WL 3349453, *5 (D.N.J. Nov. 7, 2007) ("If all the claims in an action are arbitrable, a court may dismiss the action instead of staying it.").  The complaint, therefore, shall be dismissed to permit the parties to proceed with arbitration.

### III.  CONCLUSION

For the reasons above, Plaintiff's motion for a preliminary injunction is denied.  Defendant's motion to dismiss is granted.  An appropriate Order accompanies this Opinion.

/s/ Freda L. Wolfson
FREDA L. WOLFSON, U.S.D.J.